ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| BRENDA LIZ VILLALOBOS RIVERA<br><br>Parte Apelada<br><br>v.<br><br>ABDIEL GUTIÉRREZ DEL RÍO<br><br>Parte Apelante | KLAN202400412 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>D AL2013-0594<br><br>Sobre:<br>Alimentos |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de junio de 2024.

Compareció el Sr. Abdiel Gutiérrez del Río (en adelante, el "Sr. Gutiérrez del Río" o el "Apelante") mediante recurso de apelación presentado el 25 de abril de 2024. Nos solicitó la revocación de la *Resolución y Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, el "TPI"), el 4 de marzo de 2024 y notificada al día siguiente. Mediante dicho dictamen, el foro de instancia le fijó al Sr. Gutiérrez del Río una pensión alimentaria correspondiente a dos periodos distintos. El 20 de marzo de 2024, el Apelante solicitó la reconsideración de dicha *Resolución y Orden*, la cual fue denegada por el foro primario.

Por los fundamentos que expondremos a continuación, se *confirma* la *Resolución y Orden*.

### I.

El origen del presente caso se deriva de un proceso de revisión de pensión alimentaria entre el Sr. Gutiérrez del Río y la Sra. Brenda Liz Villalobos Rivera (en adelante, la "Sra. Villalobos Rivera" o la "Apelada"),

Número Identificador
SEN2024_____

en beneficio de sus hijos menores de edad: I.I.G.V., nacida el 2 de septiembre de 2008, y A.A.G.V., nacido el 21 de septiembre de 2009. Luego de múltiples acontecimientos procesales, el 27 de junio de 2023, se celebró una Vista de Alimentos ante un Examinador de Pensiones Alimentarias (en adelante, el "EPA"). Dicha vista continuó el 31 de agosto de 2023. Como resultado, el 29 de febrero de 2024, el EPA emitió el correspondiente *Informe De Examinador de Pensiones Alimenticias*. En lo pertinente, se le recomendó al TPI lo siguiente:

1. Se fije al Sr. Gutiérrez Del Río una pensión alimentaria de $1,102.83 mensual, equivalente a un pago de $551.41 quincenal, para el periodo del 15 de agosto de 2022 al 14 de agosto de 2023 en beneficio de sus dos hijos menores de edad. Además, se ordene al Sr. Gutiérrez Del Río a reembolsar a la Sra. Villalobos Rivera el 39.05% de los gastos suplementarios de regreso a la escuela, incluyendo matrícula, libros, uniformes y materiales escolares, así como los médicos no cubiertos por el plan, dentro de 15 días de haber recibido la evidencia del gasto.
2. Se fije al Sr. Gutiérrez Del Río una pensión alimentaria de $1,637.58 mensual, equivalente a un pago de $818.79 quincenal, con efectividad al 15 de agosto de 2023 en beneficio de sus dos hijos menores de edad. Además, se ordene al Sr. Gutiérrez Del Río a reembolsar a la Sra. Villalobos Rivera el 70.75% de los gastos suplementarios de regreso a la escuela, incluyendo matrícula, libros, uniformes y materiales escolares, así como los médicos no cubiertos por el plan, dentro de 15 días de haber recibido la evidencia del gasto.
3. Se ordene al Sr. Gutiérrez Del Río a efectuar los pagos de pensión alimenticia a la madre por transferencia electrónica a través de la aplicación de ATH Móvil, comenzando el 1 de marzo de 2024. Ambas partes deberán llevar registro de lo pagado y recibido.
4. Se ordene al señor Gutiérrez Del Río a pagar la deuda por concepto de retroactividad que asciende a $5,378.23, mediante un plan de pago de 48 plazos de $112.04 quincenales, comenzando el primero de marzo de 2024.

El 4 de marzo de 2024, el TPI dictó una *Resolución y Orden* mediante la cual acogió el referido *Informe* del EPA, ordenando el pago de la pensión alimentaria, bajo los términos esbozados anteriormente. En desacuerdo, el 20 de marzo de 2024, el Sr. Gutiérrez del Río presentó una "**Moción en Solicitud de Reconsideración**", mediante la cual argumentó que: (1) la Sra. Villalobos Rivera tenía capacidad para generar ingresos mayores a $100,000.00 adicional a su ingreso fijo, de los cuales no presentó prueba de gastos de negocio y dicho ingreso debía ser imputado prospectivamente; (2) los ingresos del Apelante deben ser promediados; y

(3) los honorarios de abogado no deben ser mayores a $400.00. El foro primario emitió una *Orden* el 26 de marzo de 2024, notificada al día siguiente, en la que declaró "No Ha Lugar" la "**Moción en Solicitud de Reconsideración**".

Aún inconforme con lo anteriormente resuelto, el 25 de abril de 2024, el Apelante acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

A. ERR[Ó] E INCIDI[Ó] EN ABUSO DE DISCRECI[Ó]N EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR LA PENSI[Ó]N ALIMENTARIA SIN IMPUTAR CORRECTAMENTE EL INGRESO DE LA APELADA.

B. ERR[Ó] E INCIDI[Ó] EL ABUSO DE DISCRECCION [SIC] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO PROMEDIAR LOS INGRESOS.

C. ERR[Ó] E INCIDI[Ó] EN ABUSO DE DISCRECCION [SIC] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO TOMAR EN CONSIDERACI[Ó]N EL TIEMPO QUE EL APELANTE PASA CON LOS MENORES.

D. ERR[Ó] E INCIDI[Ó] EN ABUSO DE DISCRECCION [SIC] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA NO APLICAR LAS NUEVAS REGLAS DE DETERMINACIONES DE PENSIONES.

E. ERR[Ó] E INCIDI[Ó] EN ABUSO DE DISCRECCION [SIC] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA DETERMINAR LOS HONORARIOS.

El 2 de mayo de 2024, este Tribunal emitió *Resolución* concediéndole al Apelante un término para presentar una exposición narrativa de la prueba oral, debidamente estipulada, según fuera solicitado por éste. Entretanto, el 9 de mayo de 2024, la Apelada presentó su "**Oposición A La Apelación**" en la cual reafirmó que el dictamen impugnado fue conforme a derecho y la totalidad de la prueba desfilada en las vistas celebradas ante el EPA. Además, alegó que el Apelante señaló dos (2) errores adicionales que no fueron planteados en la "**Moción en Solicitud de Reconsideración**" y que tampoco estuvieron ante la consideración durante las vistas anteriormente mencionadas. Por tanto, solicitó se declarara "No Ha Lugar" la "**Apelación**".

Habiendo transcurrido el plazo concedido al Sr. Gutiérrez del Río para presentar la exposición narrativa de la prueba sin que este último cumpliera con lo ordenado, el 21 de junio de 2024, emitimos una segunda

*Resolución* mediante la cual le concedimos al Apelante un plazo adicional para presentar la exposición narrativa de la prueba oral, debidamente estipulada, so pena de adjudicar en los méritos el recurso ante nos sin el beneficio de la misma. **Dicho término venció nuevamente sin que el Sr. Gutiérrez del Río cumpliera o solicitara prórroga a esos efectos**.

En vista de lo anterior, y ante el hecho de que la Apelada presentó su oposición al recurso, procedemos a resolver.

**II.**

**A.**

Es doctrina reiterada en nuestra jurisdicción que la obligación de los padres de proveerles alimentos a sus hijos menores de edad está revestida del más alto interés público. Ello está cimentado en salvaguardar el mejor bienestar del menor. Díaz Rodríguez v. García Neris, 208 DPR 706, 717 (2022); Umpierre Matos v. Juelle Arbello, 203 DPR 254, 265 (2019); Ríos v. Narváez, 163 DPR 611, 618 (2004). Esta obligación de brindar alimentos es parte esencial del derecho a la vida, protegido por el Artículo II, Sección 7 de la Constitución de Puerto Rico. James Soto v. Montes Díaz, 213 DPR ___ (2024); 2024 TSPR 27; Torres Rodríguez v. Carrasquillo Nieves, 177 DPR 728, 738 (2009). Su génesis está predicada en principios generalmente reconocidos de solidaridad humana, asociados al derecho natural y unida por imperativo de los vínculos familiares. Maldonado v. Cruz, 161 DPR 1, 13 (2004). El deber de alimentar a los hijos menores de edad está regulado por varias fuentes estatutarias, cuyo fundamento cardinal lo es la relación paternofilial. "*El derecho de los menores a reclamar alimentos, la obligación de los padres de proveerlos y la interpretación de los tribunales para concederlos deben estar enmarcados en la relación paternofilial legalmente establecida; no supeditada a uno u otro artículo del Código Civil.*" Chévere v. Levis, 150 DPR 525, 539 (2000) (énfasis en el original).

El Artículo 653 del Código Civil de Puerto Rico define alimentos como "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la

posición social de su familia". 31 LPRA sec. 7531. La referida disposición estatutaria aclara que cuando el beneficiario de los alimentos es menor de edad, éstos comprenden su educación, las precauciones adecuadas según las costumbres y las circunstancias de su entorno familiar y social, así como los gastos extraordinarios para atender sus necesidades personales especiales. Íd.

Con el objetivo de lograr el cumplimiento con el pago de la obligación de pensión alimentaria, se aprobó la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como la "Ley Orgánica de la Administración para el Sustento de Menores", 8 LPRA sec. 501 *et seq.* (en adelante, "Ley de ASUMe"). La antecitada ley reitera los principios adoptados por la jurisprudencia al disponer que los padres tienen un deber continuo de sustento y manutención de sus hijos menores de edad y que a base de ello, los tribunales están facultados para ordenarles pagar una suma justa y razonable por concepto de pensión alimentaria. 8 LPRA sec. 503. Así pues, las herramientas allí establecidas tienen una naturaleza inherentemente forzosa, cuyo fin ulterior es que los alimentantes respondan con sus obligaciones alimentarias. De León Ramos v. Navarro Acevedo, 195 DPR 157, 176 (2016).

En consonancia con lo anterior, el monto de la pensión alimentaria se establece tomando en cuenta las necesidades del beneficiario y los recursos económicos disponibles del alimentante, es decir, según su capacidad financiera. Lloréns Becerra v. Mora Monteserín, 178 DPR 1003, 1017 (2010). Para calcular la capacidad económica de cada persona obligada a pagar alimentos, es esencial considerar todos los ingresos que recibe, incluso aquellos que no están detallados en la planilla de información personal. Argüello v. Argüello 155 DPR 62, 72 (2001). La referida pieza legislativa define los conceptos ingreso e ingreso neto de la siguiente manera:

[…]

> Ingresos — Comprende cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario

o empleado del Estado Libre Asociado de Puerto Rico; del Gobierno de Estados Unidos de América, el Distrito de Columbia; las Islas Vírgenes de Estados Unidos de América; o cualquier territorio o posesión sujeta a la jurisdicción de Estados Unidos de América, según lo permitan las leyes y reglamentos federales aplicables. Además, de cualquier estado de Estados Unidos de América, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad. Asimismo, contempla los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica. 8 LPRA sec. 501 (20).

Ingreso neto — Aquellos ingresos disponibles al alimentante, luego de las deducciones por concepto de contribuciones sobre ingresos, seguro social y otras requeridas por ley. Se tomarán en consideración, además, a los efectos de la determinación del ingreso neto, las deducciones por concepto de planes de retiro, asociaciones, uniones y federaciones voluntarias, así como los descuentos o pagos por concepto de primas de pólizas de seguros de vida, contra accidentes o de servicios de salud cuando el alimentista sea beneficiario de éstos. La determinación final se hará según toda la prueba disponible, incluyendo estimados, estudios y proyecciones de ingresos, gastos, estilo de vida y cualquier otra prueba pertinente. 8 LPRA sec. 501 (19).

Además, establece que, en relación con la fijación o modificación de pensiones, es mandatorio que el Tribunal determine el monto utilizando las guías adoptadas para ello. 8 LPRA sec. 518 (b). En virtud de ello, el Reglamento Núm. 8529 de 30 de octubre de 2014, según enmendado, conocida como las "Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico" (en adelante, las "Guías"), ofrecen definiciones sustancialmente equivalentes a las de la Ley de ASUMe, *supra*.[1] En su parte pertinente, las Guías definen el ingreso como cualquier tipo de ganancia monetaria, beneficio, rendimiento o frutos derivado de

---

[1] Somos conscientes de que el 15 de febrero de 2024 se aprobó el Reglamento Núm. 9535 de la Administración para el Sustento de Menores, conocido como las "Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico", el cual, deroga el Reglamento Núm. 8529, según enmendado. No obstante, al momento en que se fijó la pensión alimentaria en controversia, estaban vigentes las disposiciones del Reglamento Núm. 8529, *supra.*

sueldos, jornales, emolumentos o compensación derivada de cualquier procedencia. *Véase*, Art. 7 (16) de las Guías.

Asimismo, define el ingreso bruto como "la totalidad de los ingresos con los que cuentan la persona custodia y la persona no custodia con anterioridad a descontarse las deducciones mandatorias y las deducciones aceptadas". Íd., Art. 7 (17). Igualmente, definen el ingreso neto como aquellos ingresos disponibles al alimentante después de las deducciones por concepto de contribuciones sobre ingreso, seguro social y otras requeridas mandatoriamente por ley. Íd., Art. 7 (19) de las Guías. También, definen el ingreso no recurrente como el ingreso que cualquiera de las personas recibe una vez, sin la expectativa de volver a recibirlo. Íd., Art. 7 (21) de las Guías. Cabe aclarar que, cuando la persona custodia o no custodia tiene ingresos no recurrentes, el juzgador o la juzgadora tomarán en consideración dicho ingreso para el año en el cual la persona los reciba. Íd., Art. 9 (1)(e) de las Guías.

En esa misma línea, las referidas Guías establecen que las deducciones aceptadas son los descuentos o pagos relacionados con planes de retiro, asociaciones, uniones, federaciones voluntarias, primas de seguro de vida, seguros contra accidentes o servicios de salud accesibles que pueden ser restados del ingreso bruto cuando se demuestre que el alimentista de alguna manera se beneficia de ellos. Íd., Art. 7 (8). Mientras tanto, las deducciones mandatorias son descuentos obligatorios por concepto de contribuciones sobre ingresos, seguro social, *medicare*, cuotas sindicales, asociaciones profesionales de colegiación obligatoria y otras deducciones requeridas por ley. Íd., Art. 7 (7) de las Guías.

De las normas citadas con anterioridad, se deduce el procedimiento necesario para determinar la capacidad financiera del alimentista. Martínez v. Rodríguez, 160 DPR 145, 156 (2003). En primer lugar, se debe calcular lo que las Guías denominan "ingreso bruto", lo que implica examinar todas las fuentes de ingresos disponibles para el proveedor de alimentos. Íd. Una vez completado este análisis, se procede a calcular el ingreso neto, el cual se obtiene luego de realizar las correspondientes deducciones. El

resultado de este cálculo servirá como base para establecer la pensión alimentaria. Íd. Así pues, este proceso asegura una evaluación exhaustiva y justa de la capacidad económica del alimentista, antes de fijar la cantidad de la pensión alimentaria.

**B.**

Es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., 209 DPR 759, 779 (2022). Al respecto, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. SLG Rivera Carrasquillo v. AAA, 177 DPR 345, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el

foro apelativo cuenta solamente con "récords mudos e inexpresivos". Trinidad v. Chade, *supra*, pág. 291. No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en Dávila Nieves v. Meléndez Marín, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Íd., pág. 782.

Por otro lado, se consideran claramente erróneas las conclusiones del foro revisado si de un análisis de la totalidad de la evidencia, el foro apelativo queda convencido de que "se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". Íd., pág. 772. En otras palabras, incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". Pueblo v. Toro Martínez, 200 DPR 834, 859 (2018).

Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". Gómez Márquez *et al.* v. El Oriental, 203 DPR 783, 794 (2020). Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. Íd.

**C.**

En nuestro ordenamiento, la imposición de honorarios de abogado únicamente procede en derecho cuando una parte ha actuado con temeridad o frivolidad. Torres Vélez v. Soto Hernández, 189 DPR 972, 993 (2013) (citando a Santiago v. Sup. Grande, 166 DPR 796, 820 (2006)). Cónsono con esta norma, la Regla 44.1 (d) de Procedimiento Civil

establece, en lo pertinente, que "[e]n caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta…". 32 LPRA Ap. V.

A pesar de que la citada Regla no define en qué consiste una conducta temeraria, la jurisprudencia la ha descrito como "aquellas actuaciones de un litigante que lleven a un pleito que pudo evitarse, que provoquen la prolongación indebida del trámite judicial o que obliguen a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos". SGL González-Figueroa v. SLG *et al.*, 209 DPR 138, 148 (2022). Así, la penalidad que se impone por conducta temeraria tiene por fin "disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte". Marrero Rosado v. Marrero Rosado, 178 DPR 476, 505 (2010).

También se ha indicado que el propósito de la imposición de honorarios por temeridad es penalizar a la parte que por su "terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito". C.O.P.R. v. S.P.U., 181 DPR 299, 342 (2011); Torres Vélez v. Soto Hernández, *supra*. Es decir, que es temerario quien torna necesario un pleito frívolo, o provoca su indebida prolongación, obligando a la otra a incurrir en gastos innecesarios. Colón Santos v. Coop. Seg. Mult. P.R., 173 DPR 170, 188 (2008); P.R. Oil v. Dayco, 164 DPR 486, 511 (2005); Domínguez v. GA Life, 157 DPR 690, 706 (2002).

La determinación de si una parte obró con temeridad descansa en la sana discreción del juzgador. SGL González-Figueroa v. SLG *et al.*, *supra*, pág. 151. Determinada la existencia de temeridad, el tribunal deberá tomar en cuenta una serie de factores para poder calcular la cantidad que concederá, a saber: "(1) el grado de temeridad; (2) el trabajo realizado; (3)

la duración y naturaleza del litigio; (4) la cuantía involucrada, y (5) el nivel profesional de los abogados". C.O.P.R. v. S.P.U., *supra*. La cantidad concedida en honorarios de abogado al amparo de la Regla 44.1 de Procedimiento Civil, *supra*, no necesariamente tiene que ser equivalente al valor de los servicios legales prestados, sino a "aquella suma que en consideración al grado de temeridad y demás circunstancias el tribunal concluye que representa razonablemente el valor de esos servicios". Santos Bermúdez v. Texaco P.R., Inc., 123 DPR 351, 357 (1989).

La cuantía impuesta en concepto de honorarios de abogado es una facultad discrecional que le corresponde al tribunal sentenciador. Colón Santos v. Coop. Seg. Múlt. P.R., 173 DPR 170, 188 (2008); Monteagudo Pérez v. E.L.A., 172 DPR 12, 31 (2007); Revlon v. Las Américas Trust Co., 135 DPR 363, 377 (1994). El foro apelativo podrá intervenir en la cuantía impuesta únicamente en los casos en que la suma sea excesiva, exigua o cuando medie evidencia de que la determinación de temeridad constituya un abuso de discreción. Corpak, Art Printing v. Ramallo Brothers, 125 DPR 724, 740 (1990); Ramírez v. Club Cala de Palmas, 123 DPR 339, 350 (1989)*.

**III.**

Por estar íntimamente relacionados, adjudicaremos la procedencia de los primeros tres (3) señalamientos de error conjuntamente. Esencialmente, el Apelante sostiene que el TPI erró al no imputar correctamente el ingreso de la Apelada. Dicho planteamiento se fundamenta en que la señora Villalobos Rivera no presentó evidencia durante la vista de alimentos sobre gastos relacionados a un negocio de venta de café y mayorcas, ni se pasó evidencia sobre una serie de gastos de viajes. Igualmente, el Sr. Gutiérrez del Río plantea que de la prueba presentada se demostró que sus ingresos son irregulares con gran diferencia de un año y otro, por lo que los mismos debían ser promediados para propósitos del cálculo de la pensión. Finalmente, arguye el Apelante que el TPI incidió al no tomar en consideración el tiempo que éste pasa con

los menores de edad, por lo que procede el ajuste del cálculo de la pensión, a la luz de la evidencia presentada. Veamos.

Tal y como hemos adelantado, es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el foro de instancia. Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., *supra*, pág. 779. Asimismo, es sabido que, en nuestra jurisdicción, las partes que recurren ante este Tribunal tienen la ineludible responsabilidad de cumplir rigurosamente con las pautas reglamentarias aplicables que regulan el proceso de perfeccionamiento de los recursos que se presentan ante nuestra consideración. Hernández Maldonado v. Taco Maker, *supra*, pág. 290. Nuestro Reglamento establece que la parte apelante está en la obligación de presentar una transcripción de la prueba, una exposición estipulada de la misma o una exposición narrativa de la evidencia oral presentada ante el foro de instancia cuando esgrime planteamientos de error cuestionando la apreciación errónea de la evidencia y las determinaciones de hechos del tribunal de instancia.[2]

Según se desprende del expediente, tenemos ante nuestra consideración planteamientos relativos a la apreciación o suficiencia de la prueba que tuvo ante sí el TPI y tendentes a sugerir que las determinaciones de hechos no están sostenidas por la evidencia desfilada. No obstante, el expediente apelativo de autos no cuenta con una exposición narrativa de la prueba oral que nos permita evaluar la validez de los planteamientos traídos ante nuestra consideración, toda vez que el Apelante nunca presentó la exposición narrativa de la prueba ordenada, aun habiéndole concedido dos términos de plazos separados para así hacerlo. Por lo tanto, en ausencia de ello, este Tribunal está obligado a abstenerse de revisar las determinaciones de hechos y la apreciación que

---

[2] *Véanse*, Reglas 19 y 76 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, RR. 19 y 76.

le dio el foro primario en su ejercicio de aquilatar la prueba que tuvo ante su consideración.

En fin, a pesar de que los argumentos en los primeros tres (3) señalamientos de error están centrados en que el TPI cometió error al apreciar la evidencia desfilada y que sus conclusiones de derecho no se ajustan a la prueba admitida durante las vistas celebradas, el Apelante incumplió con la orden de este Tribunal para ponernos en posición de evaluar los méritos del recurso con el beneficio de la reproducción de la prueba oral. Sostenemos que dicha herramienta era indispensable para ejercer nuestra función revisora. La ausencia de la exposición narrativa de la prueba oral que justifique nuestra intervención no permite que el Tribunal de Apelaciones tenga los elementos para descartar la apreciación razonada y fundamentada del foro de instancia. Hernández Maldonado v. Taco Maker, *supra*, pág. 289.

En otras palabras, estamos ante un panorama en el que contamos con simples alegaciones que no derrotan la presunción de corrección que cobija las determinaciones de hechos y conclusiones basadas en la prueba oral, ni la adjudicación de credibilidad que efectuó el foro primario. Por lo tanto, huérfano el expediente apelativo de evidencia específica tendente a establecer que el TPI actuó con pasión, prejuicio, parcialidad o error manifiesto, no estamos en condiciones de variar el dictamen apelado. A la luz de ello, este foro apelativo no se encuentra en posición de atender los reclamos que allí se le plantean, por lo que resulta forzoso confirmar la forma en que se efectuó la imputación de ingresos para efectos del cálculo de la pensión alimentaria que nos ocupa. Por tanto, concluimos que el TPI no erró en su determinación en cuanto a los primeros tres señalamientos de error.

Sobre el cuarto (4) señalamiento de error, el Sr. Gutiérrez del Río argumentó que el foro primario erró al no aplicar las nuevas "Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico", acogidas mediante el Reglamento Núm. 9535, *infra*. Se fundamentó en que la *Resolución y Orden* impugnada fue emitida el 4 de marzo de 2024,

por lo que correspondía aplicar las mismas, al haber sido aprobadas el 15 de febrero de 2024. Por lo anterior, solicitó que se realizaran los cómputos utilizando las guías establecidas en el Reglamento Núm. 9535, *infra*. Veamos.

Reconocemos que el 15 de febrero de 2024 se aprobaron las "Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico", Reglamento Núm. 9535 de la Administración para el Sustento de Menores (en adelante, el "Reglamento Núm. 9535"). Así pues, en relación con el término de vigencia del Reglamento Núm. 9535, se estableció lo siguiente:

> Este Reglamento entrará en vigor a los treinta (30) días de su presentación ante el Departamento de Estado, según establecido en la Ley Núm. 38 de 2017, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico. **Este Reglamento aplicará a todos los casos que se presenten a partir de la fecha de su vigencia**. También aplicará a todos los casos pendientes de adjudicación, con la salvedad de que, **para la fijación, revisión y modificación de pensiones alimentarias correspondientes a periodos previos a la vigencia de este Reglamento, aplicarán las normas dispuestas en el Reglamento Núm. 8529 titulado Guías mandatorias para computar pensiones alimentarias en Puerto Rico, según enmendado**. Art. 26, Reglamento Núm. 9535, *supra* (énfasis suplido).

De las transcritas disposiciones, se desprende que el Reglamento Núm. 9535 entró en vigor el 16 de marzo de 2024. Es decir, dicho Reglamento aplica a los casos presentados a partir del 16 de marzo de 2024 y a los que estén pendientes para su adjudicación en la misma fecha de vigencia. Ahora bien, el texto del Reglamento es claro al disponer que se exceptúan de la aplicación del Reglamento Núm. 9535 **los casos sobre fijación, modificación o revisión de cualquier pensión alimentaria correspondientes a los periodos previos a su vigencia**, toda vez que su determinación debe ser conforme a las Guías adoptadas en el año 2014.

En el caso de epígrafe, la Sra. Villalobos Rivera presentó "**Moción Solicitando Revisión de Pensión Alimentaria**" el 10 de agosto de 2022, para que se fijara una pensión alimentaria a partir del 15 de agosto de 2022 en adelante. Nótese, pues, el periodo correspondiente a la pensión impuesta en el caso de autos es anterior a la fecha de vigencia del Reglamento Núm. 9535 y, como tal, las disposiciones aplicables son

aquellas contenidas en el Reglamento Núm. 8529, *supra*. Por consiguiente, el Reglamento Núm. 9535 no aplica en el caso de autos. Conforme el derecho antes esbozado, el TPI actuó correctamente al fijar y modificar la pensión alimenticia según las Guías establecidas en el Reglamento Núm. 8529. Concluimos, pues, que el TPI no erró al aplicar las disposiciones del Reglamento Núm. 8529, *supra*, al caso de autos.

Finalmente, en el quinto (5) y último señalamiento de error, el Apelante expone que el TPI incidió al imponerle $800.00, en concepto de honorarios de abogado, y arguye que la cantidad correcta debió ser $400.00. Veamos.

El 8 de marzo de 2024, la Sra. Villalobos Rivera presentó una "**Moción Solicitando Imposición de Pagos de Honorarios de Abogado**". El 13 de marzo de 2024, el TPI dictó *Orden* mediante la cual le impuso al Apelante la cantidad de $800.00 por concepto de honorarios de abogados. El Sr. Gutiérrez del Río alega que el foro primario erró al conceder dicha suma por concepto de honorarios por considerarlos excesivos. Fundamentó los argumentos anteriores en que los traslados de las vistas fueron a causa de la falta de comparecencia y preparación de la Apelada.

Ahora bien, al analizar detenidamente el expediente ante nuestra consideración notamos que no existe evidencia que denote abuso de discreción por parte del TPI. De hecho, los autos están huérfanos de prueba o alegación alguna que demuestre el supuesto abuso de discreción por parte del foro primario. Lo único con lo que contamos es con la opinión del Apelante de que los honorarios razonables debieron ser $400.00, sin base legal o racional alguna.

Conforme el derecho antes esbozado, este foro apelativo está impedido de intervenir en la imposición de honorarios, salvo que la suma sea excesiva, exigua o la determinación de temeridad constituya un abuso de discreción, **a base de la prueba que así se presente**. Corpak Inc. v. Ramallo Brothers, *supra,* pág. 740. Ramírez v. Club Cala de Palmas, *supra,* pág. 350. Examinado el trámite procesal del caso, no contamos con evidencia que demuestre abuso discreción que nos permita

variar la cuantía en honorarios de abogado impuesta por el TPI, por lo que en ausencia de ello, estamos impedidos de intervenir con dicha determinación.

**En suma, el Sr. Gutiérrez del Río no nos puso en condiciones para acoger los planteamientos de derecho que trajo ante nuestra consideración, pues todos sus argumentos estuvieron fundamentados en la apreciación y peso que le otorgó el foro de instancia a la prueba vertida. En ausencia de la exposición narrativa de la prueba, estamos imposibilitados de determinar si medió error manifiesto, prejuicio, parcialidad o pasión, en la adjudicación de credibilidad y en la formulación de las determinaciones de hechos recogidas por el TPI en la *Resolución y Orden* impugnada**.

## IV.

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Resolución y Orden* emitida por el TPI, mediante la cual se fijó la pensión alimentaria a favor de los menores de edad.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones